**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alison Rose, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>Wildflower Bread Company,<br><br>        Defendant. | CV09-1348-PHX-JAT<br><br>**ORDER** |

Pending before the Court are Cross Motions for Partial Judgment on the Pleadings (Doc. ## 33 & 44); Plaintiff's Motion for Collective Action Notification, for Class Certification, and to Toll Statute of Limitations (Doc. #34); Defendant's Motion for Leave to File an Amended Answer (Doc. #46); and Defendant's Motion for an Order Requiring Plaintiff and Counsel to Cease and Desist Unauthorized Communication with Putative Class Members and to Strike Notices of Consent (Doc. #74). The Court now rules on the Motions.

## I.    BACKGROUND

Defendant Wildflower Bread Company operates multiple restaurants in Arizona. Plaintiff Alison Rose worked for Defendant as an Assistant Manager. Defendant classifies all its Assistant Managers as exempt from the overtime provisions of the Fair Labor

Standards Act (the "FLSA").[1] Defendant therefore does not pay its Assistant Managers time and a half for any hours worked over forty in a work week.

Plaintiff brings this case on her own behalf and on behalf of all those similarly situated. She claims that she and the other Wildflower Assistant Managers regularly perform(ed) non-exempt physical or manual work. She alleges that the primary duties of Assistant Managers consist(ed) of food preparation and handling of food and beverage items; busing tables; operating cash registers; cleaning; stocking, receiving and storing of products and supplies; and serving Wildflower customers.

Plaintiff argues that Assistant Managers do not fall under the "executive exemption" to the FLSA set out in 29 C.F.R. §541.100 because the duties of Assistant Managers consist mainly of manual work. Plaintiff therefore seeks the remedies provided in 29 U.S.C. §216(b) for a violation of the overtime provision of 29 U.S.C. §207(a).

Plaintiff further claims that Defendant's failure to pay overtime to its Assistant Managers, as required by the FLSA, violates the Arizona Wage Act. The Arizona Wage Act does not contain a provision requiring payment of overtime for hours in excess of forty, but the Act does require that employees receive their "wages" in a timely fashion. A.R.S. §§23-351 *et seq*. If Defendant owed Plaintiff overtime wages under the FLSA, then she did not receive those "wages" in the time required by the Arizona Wage Act. The Arizona Wage Act provides for treble damages, A.R.S. §23-355, while the FLSA allows double damages, 29 U.S.C. §216(b).

Plaintiff has asked the Court for conditional collective certification of her FLSA claims pursuant to 29 U.S.C. §216 and for the Court to facilitate notice of the collective action to potential collective action plaintiffs. (Doc. #34.) She has also moved for class

---

[1]The FLSA provides that a covered employer shall not employ any employee "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. §207(a)(1).

certification under Federal Rule of Civil Procedure 23 for her state law claims. (Id.) Additionally, she requests that the Court equitably toll the statute of limitations as of the filing of the Complaint. (Id.) Defendant opposes certification of the FLSA collective action and the Rule 23 class. (Doc. #47.)

Defendant has moved for judgment on the pleadings (Doc. #33) on Plaintiff's state law claim. Defendant argues: 1) that the FLSA preempts Count II of the Complaint (the Arizona Wage Act claim) and 2) Plaintiff's Rule 23 class allegations fail to meet the pleading standards of Federal Rule of Civil Procedure 8(a). Plaintiff denies that the FLSA preempts her state claim and maintains that the Rule 23 class allegations are sufficient. (Doc. #44.) Plaintiff filed a Cross Motion for Partial Judgment on the Pleadings (Doc. #44), arguing that Defendant's affirmative defenses do not meet the Rule 8(b) pleading requirements.

A few days after Plaintiff filed her Cross Motion for Partial Judgment on the Pleadings, Defendant filed a Motion for Leave to File an Amended Answer. (Doc. #46.) Plaintiff argues the Court should deny Defendant leave to amend because the proposed amended affirmative defenses still do not meet Rule 8(b)'s pleading requirements and because she would suffer prejudice if the Court granted an amendment. (Doc. #62.)

On March 25, 2010, Defendant filed a Motion for Plaintiff and Counsel to Cease and Desist Unauthorized Communications with Putative Class Members and to Strike Notices of Consent. (Doc. #74.) Defendant claims that Plaintiff and/or her counsel sent misleading postcards to potential class members that contained Plaintiff counsel's phone number. Defendant asks the Court to instruct Plaintiff and her counsel not to make any further unauthorized contact with potential class members and to strike any opt-in consents received after the date the postcards were mailed. Plaintiff denies that either she or her counsel sent the postcards and argues that it would prejudice potential class members' rights if the Court struck all opt-in consents received after the mailing of the postcards. (Doc. #79.)

The Court will address the Cross Motions for Partial Judgment on the Pleadings and the Motion to Amend the Answer first, then will address the Motion for Collective Action

Notification and Class Action Certification, followed by the Motion to Cease and Desist.

## II. CROSS MOTIONS FOR JUDGMENT ON THE PLEADINGS AND MOTION TO AMEND ANSWER

### A. Cross Motions Pursuant to Rule 12(c)

A party may file a motion for judgment on the pleadings at any time after the pleadings are closed, but must file the motion early enough not to delay trial. Fed.R.Civ.P. 12(c). A Rule 12(c) motion for judgment on the pleadings, "is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998). In other words, dismissal pursuant to Rule 12(c) is appropriate if the facts as pleaded would not entitle the plaintiff to a remedy. *Merchants Home Delivery Serv., Inc. v. Hall & Co.*, 50 F.3d 1486, 1488 (9th Cir.1995).

In considering a motion for judgment on the pleadings, the Court cannot consider evidence outside the pleadings, unless the Court treats the motion as one pursuant to Rule 56. Fed.R.Civ.P. 12(c). But the Court may consider facts that are contained in materials of which the court may take judicial notice. *See Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir.1994).

Defendant makes two arguments for a Rule 12(c) dismissal of Plaintiff's Count II Arizona Wage Act claim. First, Defendant argues that the doctrine of obstacle preemption prevents Plaintiff from bringing a parallel state wage law claim. Second, Defendant argues that Plaintiff's Rule 23 class allegations fail to state a claim because they lack virtually any fact. The Court need not address Defendant's second argument because the Court agrees with Defendant that the FLSA preempts Plaintiff's Count II A.R.S. §23-351(C)(3) claim.

Courts have struggled with the problem of parallel federal and state wage and hour claims. The struggle stems, in part, from 1) the tension between the FLSA's opt-in requirement and the availability of a traditional Rule 23 opt-out class for parallel state wage and hour claims and 2) plaintiffs' perceived attempts to obtain more favorable remedies

under state law for what are essentially federal claims.

In FLSA collective actions, plaintiffs must affirmatively opt-in to participate in the litigation. 29 U.S.C. §216(b). Under Rule 23, all potential class members are included in the class and bound by a class judgment unless they affirmatively opt out of the litigation. Fed.R.Civ.P.23(c)(3). Because of their respective opt-in and opt-out frameworks, courts have characterized §216(b) and Rule 23 as "mutually exclusive and irreconcilable." *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975)(footnote omitted).

Plaintiffs and their counsel obviously have an incentive to plead state claims alongside FLSA claims in order to achieve larger class sizes.[2] On average, an opt-in collective action generates participation of only fifteen to thirty percent of potential class members. Craig Becker & Paul Strauss, *Representing Low-Wage Workers in the Absence of a Class: The Peculiar Case of Section 16 of the Fair Labor Standards Act and the Underenforcement of Minimum Labor Standards*, 92 Minn. L. Rev. 1325-26, 1326 n.56 (2008)(citing *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 310 (3rd Cir. 2003)). Larger classes mean larger damage awards and higher attorneys' fees. Plus, as mentioned previously, some state wage and hour laws provide remedies not available under the FLSA. If plaintiffs can plead both federal and state causes of action, they can have the best of both worlds.

Courts have dealt with the tension between federal and state wage claims in different ways. Some courts have declined to exercise supplemental jurisdiction over parallel state claims pursuant to 28 U.S.C. §1367(c) because the state issues predominate, i.e., the federal tail wags "what is in substance a state dog," *De Asencio*, 342 F.3d at 309, and/or because the incongruity between the two frameworks provides compelling reasons for declining jurisdiction.

Other courts have refused to certify a state law class action because the class could

---

[2]The Court in no way suggests or believes that Plaintiff's counsel has an inappropriate motive for including a state cause of action in this case.

not satisfy Rule 23(b)(3)'s requirement that a Rule 23 class must be the superior means of adjudicating the plaintiffs' claims. *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 469-70 (N.D.Cal 2004)(stating the "opt-in/opt-out consideration undermines two of the superiority factors."). Still other courts have not articulated a specific legal basis for dismissing state claims, but cite to general concerns about undermining congressional intent. *See, e.g., Otto v. Pocono Health System*, 457 F.Supp.2d 522, 524 (M.D.Pa. 2006)("It is clear that Congress labored to create an opt-in scheme . . . specifically to alleviate the fear that absent individuals would not have their rights litigated without their input or knowledge. To allow an [sic] Section 216(b) opt-in action to proceed accompanied by a Rule 23 opt-out state law class action claim would essentially nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of [the] opt-in requirement.").

The Court perceives the logic in all these different approaches,[3] but finds that the doctrine of preemption provides the most compelling reason for granting judgment to Defendant on Plaintiff's parallel state law claims. The United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Supremacy Clause preemption analysis begins with the assumption that a federal law does not supersede the historic police powers of the states unless Congress clearly intended for the law to do so. *Williamson v. Gen. Dynamics*, 208 F.3d 1144, 1149 (9th Cir. 2000).

The Ninth Circuit has adopted the three categories of preemption set out by the Supreme Court:

> (1) express preemption - where Congress explicitly defines the extent to which its enactments preempt state law; (2) field preemption - where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy and (3) conflict preemption - where it is impossible to

---

[3]The Court notes that many courts, in well- reasoned opinions, have refused to dismiss parallel state law claims on supplementary jurisdiction, incompatibility, or Rule 23(b)(3) grounds.

> comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Id.* (internal quotations omitted). Although courts use these three categories when analyzing preemption, the categories are not "rigidly distinct." *Id.* at 1150 (internal quotations omitted). The "ultimate touchstone of pre-emption analysis" is the purpose of Congress. *Id.* (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)(plurality)). Courts must decide preemption issues on a case-by-case basis. *Id.* at 1155.

Defendant does not argue that the FLSA expressly preempts Plaintiff's A.R.S. §23-351(C)(3) claim, nor does Defendant argue that the FLSA preempts the entire field of law. The FLSA's "savings clause" demonstrates that Congress did not intend to preempt the entire field. The "savings clause" reads:

> No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek established under this chapter, and no provision of this chapter relating to the employment of child labor shall justify noncompliance with any Federal or State law or municipal ordinance establishing a higher standard than the standard established under this chapter.

29 U.S.C. 218(a).

Defendant asserts that the third category, obstacle preemption, applies to Plaintiff's A.R.S. §23-351(C)(3) claim. Defendant argues that Plaintiff's Arizona wage law claim conflicts with the FLSA's provisions and stands as an obstacle to the accomplishment of the full purposes and objectives of Congress in enacting the FLSA and its amendments. The Court must determine whether Plaintiff's A.R.S. §23-351(C)(3) claim, which is just a claim for unpaid overtime wages, conflicts with the FLSA.

The Ninth Circuit Court of Appeals has discussed whether the FLSA preempts a state statutory claim for unpaid overtime wages, albeit in dicta. In *Williamson*, the Ninth Circuit Court of Appeals analyzed whether the plaintiffs' state career fraud claims conflicted with the anti-retaliation provision of the FLSA. Ultimately, the Ninth Circuit decided that they

did not because the FLSA's anti-retaliation provision did not cover the fraud claims. 208 F.3d at 1155. The FLSA did not cover the fraud claims because the plaintiffs had not filed a complaint with an agency or the courts or even complained to a supervisor about an FLSA violation. *Id.* The Ninth Circuit also found that the plaintiffs were not attempting to avoid the FLSA to seek a better remedy. *Id.* at 1153.

In reaching these conclusions, the Ninth Circuit stated:

> The [plaintiffs'] career fraud claims do not conflict with [sic] purpose of the FLSA of protecting employees. Nor do they upset by [sic] any balance created by amendments to the statute. Fraud claims by employees do not conflict with the FLSA any more than claims for wrongful death, assault, or murder. *Claims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA.* That is not the case here.

*Id.* at 1154 (emphasis added). The Ninth Circuit recognized the importance of the federalism concerns raised by the defendants' preemption argument and stated, "[W]e are reluctant to allow a plaintiff to circumvent the FLSA's *comprehensive statutory remedies*." *Id.* at 1155 (emphasis added).

As recently as last summer, the Ninth Circuit Court of Appeals has admonished parties to cite *Williamson* and other circuit precedent when raising preemption issues. *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 959 n.5 (9th Cir. 2009). In *Wells Fargo*, an overtime case, the defendant argued on appeal that the plaintiffs could not bring a state law opt-out class action because the opt-out procedures conflicted with the FLSA's opt-in procedures. *Id.*

The Ninth Circuit stated that whether an unasserted FLSA claim bars a state law suit is a question of preemption. *Id.* In its discussion of the preemption issue, the court cited with approval *Anderson v. Sara Lee*, 508 F.3d 181 (4th Cir. 2007) and, more specifically, *Anderson's* discussion of *Williamson*. *In re Wells Fargo*, at 959 n.5.[4] But because the

---

[4]The Ninth Circuit also cited with approval a law review article addressing FLSA preemption issues. *See* Rachel K. Alexander, *Federal Tails and State Puppy Dogs:*

- 8 -

defendant disclaimed making any preemption arguments and had not cited to the Ninth Circuit's preemption precedent, the Ninth Circuit declined to decide the preemption issue. *Id*.

In *Anderson v. Sara Lee*, the plaintiffs brought FLSA and state law claims all stemming from the defendant's failure to pay plaintiffs for the time they spent changing into and out of their mandatory work uniforms. 508 F.3d at 182. The Fourth Circuit Court of Appeals addressed whether obstacle preemption applied to the plaintiffs' state law claims for breach of contract, negligence, and fraud because those claims conflicted with the FLSA. *Id*. at 191.

The Forth Circuit began its analysis by noting that the FLSA provides an unusually elaborate enforcement scheme. *Id*. at 192 (internal quotations omitted). "With respect to the minimum wage and overtime compensation requirements, the FLSA's enforcement scheme includes the provision of criminal penalties for willful violations; the empowerment of the Secretary of Labor to supervise payment of unpaid wages due and to bring actions for unpaid wages, liquidated damages, and injunctive relief; and the authorization for workers to file private actions, in state or federal court, to recover unpaid wages, liquidated damages, and costs and attorney's fees." *Id*. (citing 29 U.S.C. §§215-217). The Fourth Circuit then contrasted those remedies with the state law claim remedies available, which in some respects were more generous than the FLSA remedies. *Id*. at 192-93.

The fact that the plaintiffs' state law claims all depended on establishing a violation of the FLSA proved crucial to the Fourth Circuit's decision that the FLSA preempted the state law claims. *Id*. at 193. The state claims required essentially the same proof as the plaintiffs' FLSA claims. The plaintiffs did not argue that they were entitled to unpaid wages

*Preempting Parallel State Wage Claims to Preserve the Integrity of Federal Group Wage Actions*, 58 Am. Univ. L.R. 515 (2009). In that article, Ms. Alexander posits that the FLSA preempts state law claims (whether class or individual allegations) to the extent those state claims are parallel to the FLSA. *Id*. at 548.

pursuant to their state claims, but, instead, relied on the FLSA for their rights and on the state claims as a source of remedies. *Id*. "Importantly, the FLSA does not explicitly authorize states to create alternative remedies for FLSA violations." *Id*.

The Fourth Circuit found that the FLSA's unusually elaborate enforcement scheme negated the normal presumption against preemption of state remedies. *Id*. The court nevertheless heeded the Supreme Court's warning that the mere existence of even a detailed federal enforcement scheme does not imply preemption of state remedies. *Id*. Relying in part on past Fourth Circuit precedent, the court found that the FLSA provides the exclusive remedies for the enforcement of its own provisions. *Id*. at 194. The court held, "Because the FLSA's enforcement scheme is an exclusive one, we further conclude that the Class Members' FLSA-based contract, negligence, and fraud claims are precluded under a theory of obstacle preemption." *Id*. The court stated that its conclusion was consistent with the rulings of several other courts, including the Ninth Circuit Court of Appeals. *Id*. at 195 n.12 ("The Ninth Circuit has suggested, without deciding, that 'claims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA.'")(citing *Williamson*, 208 F.3d at 1154).[5]

The First Circuit Court of Appeals reached a similar conclusion in *Roman v. Maietta Construction, Inc.*, 147 F.3d 71 (1st Cir. 1998). The plaintiff in *Roman* sued his former employer for unpaid wages under the FLSA and joined state law claims for minimum wage and overtime under the Maine wage statute. *Id*. at 72-3. The First Circuit stated that the "FLSA is the exclusive remedy for enforcement of rights created under the FLSA." *Id*. at 76 (internal citations omitted). The court warned that plaintiffs cannot circumvent the exclusive remedy prescribed by Congress by asserting equivalent state claims in addition to

---

[5]Again, the Ninth Circuit has cited the *Anderson* decision with approval, including *Anderson's* discussion of *Williamson*. *In re Wells Fargo*, 571 F.3d at 959 n.5.

the FLSA claim. *Id.*[6]

Courts in this District have reached different conclusions on the issue of FLSA obstacle preemption. At least two judges have found that the FLSA does not preempt parallel state law claims. *See Madrid v. Peak Constr.*, No. 2:09-cv-00311 (D.Ariz. July 23, 2009); *Aragon v. Bravo Harvesting*, 1993 WL 432402 (D.Ariz. May 7, 1993). But at least one Judge has found that the FLSA does preempt a claim under the Arizona statutory subsections at issue here. *See Wood v. TriVita, Inc.*, No. 2:08-cv-0765 (D.Ariz. September 18, 2008).

The court in *Madrid* acknowledged that *Williamson* suggests that claims seeking overtime compensation must be brought under the FLSA, but nonetheless found that the FLSA did not preempt plaintiffs' claim under A.R.S. §23-351. *Madrid*, No. 2:09-cv-00311 at p. 12. Judge Sedwik held that just because a violation of §23-351 provides for treble damages versus the FLSA's double damages does not mean that §23-351 conflicts with the FLSA either in substance or purpose.

Judge Broomfield in *Aragon* found that the FLSA did not preempt plaintiffs' breach of contract claim for wages due. 1993 WL 432402 at *5. Judge Broomfield relied on the savings clause of the FLSA and the fact that the Arizona law claims allowed for more generous remedies. He also found that the state remedies did not conflict with the FLSA. In reaching these conclusions, Judge Broomfield did acknowledge that it was a very close issue. *Id.*

The Court finds the reasoning of the Fourth Circuit in *Anderson* as set out above and

---

[6]On appeal, Mr. Roman argued that his claim under Me.R.S. §621(1) was not preempted because that claim for relief had no FLSA equivalent. Section 621(1) requires an employer to "pay weekly each employee engaged in its business the wages earned by the employee within 8 days of the date of that payment." *Roman*, 147 F.3d at 76 n.1 (citing 26 Me.R.S. §621(1)). That is almost exactly the issue here. The Fourth Circuit did not reach that particular argument, however, because Mr. Roman had never raised a claim under that subsection at the trial level.

Judge Bolton's reasoning in *Wood* more persuasive than in *Madrid* and *Aragon*. The defendants in Wood moved to dismiss the plaintiff's claim for relief under A.R.S. §§23-351, -353, & -355 because her claim was predicated on a violation of the FLSA and conflicted with the FLSA's overtime and collective action provisions. *Wood*, No. 2:08-cv-00765 at p.1. As stated previously in this Order, §23-351(C)(3) requires timely payment of overtime pay owed. The *Wood* plaintiff argued that the defendants owed employees overtime under the FLSA and that therefore the overtime pay was not timely paid as required by §§23-351 and 23-353. The plaintiff argued entitlement to treble damages under §23-355.

Judge Bolton pointed out that Count Two made clear that the plaintiff's claim under §§23-351 and 23-353 was based solely on the defendants' failure to timely pay overtime compensation. *Wood*, at p.5. Judge Bolton noted that Arizona statutes do not regulate whether or not an employee is entitled to overtime compensation; instead, they regulate when wages must be paid. *Id.* "Plaintiff's alleged entitlement to overtime compensation is based solely on the FLSA's §207, and yet Plaintiff seeks remedies under §23-355 that are more generous than those available under the FLSA." *Id.*

Judge Bolton cited *Wililamson* and *Anderson* in concluding that obstacle preemption precluded the plaintiff's Arizona statutory claims. She held that the plaintiff's Count Two for violation of §§23-351 and 23-353 amounted to "nothing more than a claim for overtime due under the FLSA. In sum, she alleges that she was not paid overtime allegedly due under the FLSA, and then alleges that it was also late under §§23-351 and 23-353. To allow Plaintiff to bring suit for a violation of the FLSA and seek a remedy other than that provided by the FLSA would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the Congress in enacting the FLSA." *Id.* at p.7. Judge Bolton also found that to allow the plaintiff to proceed on the state law claim would frustrate Congress's intent to require an opt-in procedure for FLSA collective actions. *Id.* at pp. 7-9.

Although it is a close issue with well-reasoned opinions on either side, the Court finds that under the circumstances of this case – where the only state law claim wholly depends

upon a violation of the FLSA – the FLSA preempts Plaintiff's Count II. The Court reaches this conclusion for a few reasons.

The Court believes the Ninth Circuit Court of Appeals has indicated that it would reach the same decision if presented with the parallel federal and state claims alleged here. In *Williamson* the Ninth Circuit stated, "Claims that are directly covered by the FLSA (such as overtime and retaliation disputes) *must be brought under the FLSA*." 208 F.3d at 1154. The court noted its reluctance to allow a plaintiff to circumvent the FLSA's comprehensive statutory remedies. *Id*. at 1155. The Court believes that allowing Plaintiff to file an FLSA overtime claim and a claim under the Arizona wage statute that depends completely on the FLSA for its viability would allow her to circumvent the comprehensive remedies available under the FLSA – precisely the situation against which the Ninth Circuit cautioned. The Plaintiff's state claim cannot stand alone and she should not be able to recover treble damages for what is essentially an FLSA overtime claim.

Some courts that have found the FLSA does not preempt parallel state law claims that provide more generous remedies have relied on the FLSA's "savings clause." The Court acknowledges that the savings clause indicates that Congress has not preempted the field. But the savings clause says nothing about states setting more generous remedies for FLSA-derivative claims. Rather, the savings clause specifically allows states to set a higher minimum wage and/or a shorter work week (and more strict child labor laws): "No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek established under this chapter . . .." 29 U.S.C. §218(a). Because the savings clause does not explicitly authorize states to provide alternative remedies for FLSA violations, the Court does not believe it is implicated in this case.

Finally, the Court finds that allowing Plaintiff to proceed on Count II would frustrate the "accomplishment and execution of the full purposes and objectives of Congress."

- 13 -

*Williamson*, 208 F.3d at 1149. As previously stated, Congress enacted a very comprehensive set of remedies for FLSA violations. To allow additional recovery for an FLSA-dependent state law claim would thwart that careful framework. The FLSA should be the exclusive enforcement scheme for an overtime claim, provided a state has not enacted a shorter work week or higher overtime pay. Arizona has not.

Perhaps more importantly, allowing Plaintiff to seek certification of a Rule 23 opt-out class for a wholly FLSA-dependent state law claim would frustrate one of the express objectives of Congress in passing the Portal-to-Portal amendments to the FLSA. Originally, the FLSA gave employees the right to bring a traditional opt-out class action. A United States Supreme Court decision interpreting the FLSA led to thousands of portal-to-portal lawsuits.[7] *De Asencio*, 342 F.3d at 306. In response to the dramatic increase in litigation, Congress sought to "define and limit the jurisdiction of the courts through the Portal-to-Portal Act." *Id.* Noting the immensity of the litigation problem, Congress amended the FLSA to require plaintiffs to affirmatively opt-in to overtime pay litigation. *Id.*

Legislative history indicates that Congress enacted the opt-in requirement in part to save employers from the cost of class action fishing expeditions. *See* H.R. Rep. No. 80-71 (1947), as reprinted in Bureau of Nat'l Affairs, *The Portal to Portal Act of 1947: What It Does, How It Applies, What It Means 2* at D3 (1947)("The procedure in these suits follows a general pattern. A petition is filed under section 16(b) by one or two employees in behalf of many others. To this is [sic] attached interrogatories calling upon the employer to furnish specific information regarding each employee during the entire period of employment. The furnishing of this data alone is a tremendous financial burden to the employer.").

"The relevant amendment was for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right *and freeing employers of the burden of*

---

[7]The term "portal to portal" means an employee's work day from starting time to quitting time. *De Asencio*, 342 F.3d at 306.

- 14 -

*representative actions*." *Hoffmann-La Roche Inc.*, 493 U.S. 165, 173 (1989)(emphasis added)(citing Cong.Rec. 538, 2182 (1947)(remarks of Sen. Donnell)). The policy behind requiring FLSA plaintiffs to opt in to a collective class would largely be thwarted if the Court permitted Plaintiff to "back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement." *Leuthold*, 224 F.R.D. at 470. The Court will not allow Plaintiff to avoid Congress's express mandate for opt-in collective actions for FLSA claims by adding a state statutory claim that depends on a violation of the FLSA.

For all of the reasons outlined above, the Court will grant Defendant's motion for judgment on the pleadings on Plaintiff's Count II. The Court will deny Plaintiff's motion for judgment on the pleadings as moot because the Court, as further explained below, is granting Defendant leave to amend its Answer. Plaintiff's pending cross motion for partial judgment on the pleadings therefore no longer will respond to the operative pleading.

### B.    Motion for Leave to File Amended Answer

Defendant has filed a motion to amend its answer to add detail to its affirmative defenses. Defendant filed the Motion within the deadline set by the Court in the Rule 16 Scheduling Order.

Leave to amend a pleading, "shall be freely given when justice so requires." Fed. R. Civ. Pro. 15(a). Whether to grant a motion to amend depends on the following factors: (1) undue delay, (2) bad faith, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended the pleading. *Western Shoshone Nat. Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991). The most important of these factors is prejudice to the opposing party. *U.S. v. Pend Oreille Public Utility Dist., No. 1*, 926 F.2d 1502, 1511 (9th Cir. 1991).

Plaintiff opposes Defendant's motion to amend on the grounds of futility and prejudice. Regarding the futility of amendments, "[a] district court does not err in denying leave to amend where the amendment would be futile . . . or would be subject to dismissal."

- 15 -

*Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (citations omitted); *see Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("A motion for leave to amend may be denied if it appears to be futile or legally insufficient.") (citation omitted). "However, a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller*, 845 F.2d at 214; *see Foman v. Davis*, 371 U.S. 178, 182 (1962)(stating that "[i]f the underlying facts or circumstances relied upon by a [movant] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits").

The Court cannot say that Defendant could prove no set of facts under the proposed amendments that would constitute valid affirmative defenses. The Court finds that Defendant has met its pleading burden in the proposed amended answer. Moreover, the Court notes that in its Reply, Defendant indicates it will amend the answer even more than initially proposed if the Court grants the Motion. The Court will defer to Rule 15's preference for resolving an issue on the merits rather than on technicalities. *See Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987)(internal quotations omitted)("Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality.").

Plaintiff argues that she will suffer prejudice if the Court grants the Motion, but does not indicate how she will suffer. She complains that Defendant waited until the very last day set out in the Rule 16 Scheduling Order for amending the answer, "over four and one-half months after obtaining new counsel, and nearly a month after Plaintiff filed a motion for collective action notification on November 16, 2009, which explicitly asserted that Defendant's answer was deficient." (Doc. #62, p.3.) But she does not specifically explain how the timing of the Motion prejudices her. Plaintiff has not demonstrated prejudice, which is the most important factor in the decision whether to grant a motion to amend.

Because the five factors weigh in favor of allowing an amendment, the Court will grant Defendant's Motion for Leave to File an Amended Answer. Defendant shall file its Amended Answer within fifteen (15) days of the date of this Order.

**III. MOTION FOR COLLECTIVE ACTION AND CLASS CERTIFICATION**

Because the Court has dismissed the only state law claim in this case, Plaintiff cannot pursue a Rule 23 class action. The Court therefore denies that portion of the Motion as moot.

The Court now turns to the portion of the Motion requesting a collective action under the FLSA. Section 216(b) of the FLSA allows employees to represent similarly situated co-workers in an action against their employer for failure to pay wages owed. 29 U.S.C. §216(b)("An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.") As discussed previously in this Order, only employees who consent in writing can become party plaintiffs to a collective action. *Id*. If appropriate, collective actions benefit the judicial system by efficiently resolving in one proceeding common issues of law and fact. *Hoffman-La Roche*, 493 U.S. at 170.

Plaintiff asks the Court to conditionally certify this action as a representative collective action pursuant to 29 U.S.C. §216(b) on behalf of all current and former Assistant Managers employed by Defendant Wildflower at any time on or after three years prior to the filing of the Complaint. The decision to certify a collective action under the FLSA is within the discretion of the Court. *Edwards v. City of Long Beach*, 467 F.Supp.2d 986, 989 (C.D. Calif. 2006). To certify a collective action under the FLSA, the Court must determine whether Plaintiff and potential opt-in members are "similarly situated." 29 U.S.C. §216(b). The FLSA does not define the term "similarly situated," and the Ninth Circuit Court of Appeals has not construed it. *Wood v. Trivita, Inc.*, 2009 WL 2046048 at *2 (D.Ariz. Jan. 22, 2009).

Courts have taken at least three different approaches to analyzing the issue: "(1) a two-tiered case-by-case approach, (2) the incorporation of the requirements of Rule 23 of the current Federal Rules of Civil Procedure, or (3) the incorporation of the requirements of the pre-1966 version of Rule 23 for 'spurious' class actions." *Id*. The majority of courts have

adopted the two-tiered approach. *See, e.g., Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *Edwards*, 467 F.Supp.2d at 990; *Hutton v. Bank of America*, 2007 WL 5307976 at *1 (D. Ariz. March 31, 2007). This Court will follow the majority two-tiered approach.

Under the two-tiered approach, during the early stages of litigation, the Court evaluates the case under a lenient standard and may grant conditional certification. *Hipp*, 252 F.3d at 1217. The Court then reevaluates, usually prompted by a motion for decertification,[8] the "similarly situated" question at a later stage, once discovery has produced sufficient information regarding the nature of the claims. *Id.* at 1217-18.

At the early stage, or the "notice stage," the Court makes the "similarly situated" decision based on the pleadings and any declarations that have been submitted. *Id.* at 1218 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)). Because the Court does not have much evidence at this stage, the Court uses a fairly lenient standard. *Id.* The second determination, under a stricter standard, is based on much more information, which makes a factual determination possible. *Id.*; *Wood*, 2009 WL 2046048 at *3. At the second stage, the Court reviews several factors, including: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant that appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001). At all times, Plaintiff has the burden of proving she meets the "similarly situated" requirement. *See Hipp*, 252 F.3d at 1217.

Despite Defendant's urging, the Court will apply a lenient analysis to the "similarly situated" requirement. At the time Plaintiff filed her Motion, a little over seven months remained until the close of discovery. The Court finds it appropriate to apply a lenient

---

[8]The Court does not truly "certify" an FLSA collective action, but uses the term decertification for lack of a better word.

standard because the case was in its early stages when Plaintiff filed her request for a collective action.

Plaintiff has alleged that Defendant misclassifies all Assistant Managers as exempt employees pursuant to Defendant's policies and procedures. Defendant admits that it classifies all its Assistant Managers as exempt from the overtime provisions of the FLSA. Plaintiff further alleges that all Assistant Managers routinely perform non-exempt responsibilities, such as food preparation and handling of food and beverage items; busing tables; operating cash registers; cleaning; stocking, receiving and storing of products and supplies; and serving Wildflower patrons. Plaintiff has submitted opt-in agreements of other employees who have indicated that they are similarly situated to her.

While this evidence is thin, it is sufficient at the first, lenient stage of the "similarly situated" analysis. The Court therefore will conditionally certify a collective action under the FLSA.[9] After full discovery reveals the actual facts of the case and before the dispositive motion deadline, Defendant may move to "decertify" the case. If Defendant chooses to file a "decertification" motion, the Court will engage in a much more rigorous analysis of the "similarly situated" issue.

The Court finds it is appropriate to give notice of the collective action to potential plaintiffs going back three years prior to the filing of the Complaint. The Court believes it better to be overly inclusive at the notice stage. But the Court's decision to give notice for the three-year time period does not indicate a finding on willfulness.[10] Defendant may move for summary judgment on an opt-in plaintiff's claim on statute of limitations grounds if appropriate.

Plaintiff has asked the Court to equitably toll the statute of limitations as of the filing

---

[9]Only employees that submit written consents will be allowed to participate in the collective action.

[10]Willful violations of the FLSA are subject to a three-year statute of limitations. 29 U.S.C. §255(a).

- 19 -

of the Complaint. Under the FLSA, the statute of limitations for each individual party plaintiff is not tolled until he or she files written consent to opt in to the action. 29 U.S.C. §256(b). Defendant suggests that Plaintiff's request for tolling is premature because the Court has not yet certified a collective action.

The Court agrees that Plaintiff's request is premature, but not for the reason given by Defendant. Plaintiff has not stated that any of the current opt-in plaintiffs need the benefit of equitable tolling. The Court declines to address the issue of equitable tolling until it actually arises. The Court therefore will deny the Motion to Toll the Statute of Limitations without prejudice to Plaintiff making equitable tolling arguments in response to a motion for summary judgment or in any other response.

Plaintiff has proposed a form of notice to send to potential opt-in plaintiffs. (*See* Ex. A to Plaintiff's Motion for Collective Action Notification (Doc. #34-2)). Other than globally objecting to the Court granting collective action status, Defendant has not made any specific objections to the proposed form of notice. The Court therefore will approve the proposed form of notice with a modification on timing. Potential plaintiffs shall have sixty (60) days, not the proposed ninety (90) days, to opt in to the collective action.

## IV. Defendant's Motion to Cease and Desist

On January 4, 2010, someone mailed a misleading postcard regarding this litigation to potential plaintiffs. At least two people contacted Plaintiff's counsel after receiving the postcard and indicated they want to join the action. Defendant believes that either Plaintiff or her counsel mailed the postcard. Plaintiff denies that either she or her counsel mailed the postcard.

Defendant has no definitive proof that either Plaintiff or her counsel mailed the postcard. The Court will take Plaintiff's counsel at their word that neither counsel nor Plaintiff sent the postcard. Even if Plaintiff or her counsel had mailed the card, the Court probably would not impose the strict sanction suggested by Defendant – that the Court strike all opt-in forms filed after the mailing of the postcard.

Because Plaintiff claims that she and her counsel had nothing to do with mailing the postcard, the Court will deny the Motion to Cease and Desist. But if Defendant obtains definitive proof that either Plaintiff or her counsel sent or instructed someone else to send the offending postcard, the Court would entertain a motion for sanctions in the amount of attorneys' fees expended by Defendant in filing the Motion to Cease and Desist. The Court further strongly cautions Plaintiff and her counsel not to send any notice of the conditional collective action other than the Notice approved by the Court in this Order.

Accordingly,

IT IS ORDERED Granting Defendant's Motion for Partial Judgment on the Pleadings as to Count II only (Doc. #33).

IT IS FURTHER ORDERED Denying Plaintiff's Cross Motion for Partial Judgment on the Pleadings as moot (Doc. #44).

IT IS FURTHER ORDERED Granting Defendant's Motion for Leave to File Amended Answer (Doc. # 46). Defendant shall have fifteen (15) days from the date of this Order to file its Amended Answer.

IT IS FURTHER ORDERED Denying in part and Granting in part Plaintiff's Motion for Collective Action Notification, Motion for Class Action Certification and Motion to Toll Statute of Limitations (Doc. #34). It is ordered denying as moot the motion for certification of a Rule 23 class action. It is ordered denying at this time the motion to toll the statute of limitations without prejudice to Plaintiff re-urging those arguments at the appropriate time. It is ordered Granting Plaintiff's motion for a collective action under the FLSA.

IT IS FURTHER ORDERED that this case is conditionally certified as a representative collective action pursuant to the FLSA, 29 U.S.C. §216(b), on behalf of all current and former Wildflower Assistant Managers employed at any time on or after three years prior to the filing of the Complaint.

IT IS FURTHER ORDERED that Defendant shall identify all current and former Assistant Managers employed by Defendant within the relevant three-year period and

produce to Plaintiff within ten (10) days of this Order, if known by Defendant, the Assistant Managers' last mailing addresses, alternate addresses, business and personal email addresses, telephone numbers, work locations, and dates of employment.

IT IS FURTHER ORDERED that Plaintiff shall mail notice of the FLSA action to all potential opt-in plaintiffs in the form of the Notice attached to Plaintiff's Motion as Exhibit A (Doc. #34-2), as modified by this Order, within thirty (30) days of the date of this Order;

IT IS FURTHER ORDERED that all potential plaintiffs may "opt-in" to the collective action within sixty (60) days of the mailing of the notice of collective action by sending the opt-in form to Plaintiff's counsel;

IT IS FURTHER ORDERED Denying Defendant's Motion to Cease and Desist (Doc. #74).

DATED this 4th day of May, 2010.

James A. Teilborg
United States District Judge